UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DAVID BROWN,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA LAW ENFORCEMENT ASSOCIATION, LONG-TERM DISABILITY PLAN, et al.,<br><br>Defendants. | Case No.  14-cv-03559-JCS<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD PARTY COMPLAINT**<br><br>Re: Dkt. No. 35 |

## I.      INTRODUCTION

Presently before the Court is Third Party Defendant's Motion to Dismiss Third Party Complaint ("Motion"). The Court held a hearing on the Motion on February 27, 2014. For the reasons stated below, the Motion is GRANTED.

## II.     BACKGROUND

In this case, Plaintiff William Brown, who is medically retired from the Oakland Police Department, has filed a putative class action against his long-term disability plan, the plan's sponsor, and the plan's administrator under ERISA for denied benefits and breach of fiduciary duty. Defendants are California Law Enforcement Association Group Long Term Disability Plan ("CLEA Plan"); California Law Enforcement Association ("CLEA"); and California Administration Insurance Services, Inc ("CAISI"). The CLEA Plan is offered by CLEA and administered by CAISI. Defendants have in turn filed a Third Party Complaint against Brown's employee organization, the Oakland Police Officers' Association ("OPOA").

### A.      Complaint

The dispute arises from the following alleged facts:  In July 2011, Brown became "totally disabled" within the meaning of the CLEA Plan. Compl. at 6. He went on a leave of absence from

United States District Court
Northern District of California

1    Oakland Police Department from July 2011 through June 2012. *Id*. at 3. During his leave of

2    absence, Brown received pay pursuant to California Labor Code § 4850 ("§ 4850"), and OPOA

3    withheld part of his paycheck to pay the monthly premium contributions for Brown's CLEA Plan.

4    *Id*. In November 2011, Brown submitted a written claim for long-term disability benefits under the

5    CLEA Plan.[1] *Id*. at 3–4. Effective May 1, 2012, OPOA switched its members' long-term disability

6    coverage to another provider and stopped paying premiums to Brown's CLEA Plan. *Id*. at 4. In

7    June 2012, Brown medically retired from the Oakland Police Department. *Id*. at 3.

8         In June 2012[2], when Brown informed CAISI of his retirement date, CAISI responded that

9    he was no longer eligible for the benefits "because OPOA had stopped paying premiums for the

10   CLEA Plan." Compl. at 4. Then in September 2012, CAISI issued a formal, written denial of

11   Brown's claim, contending that "in order to maintain their eligibility for benefits, CLEA Plan

12   participants are required to continue paying premiums even after becoming totally disabled, during

13   the period that they receive Section 4850 pay," thus denying Brown's claim "on the ground that

14   his payment of premiums did not continue from the time he became disabled until his disability

15   retirement." *Id*.

16        Among other claims, Brown alleges that Defendants never informed him that he needed to

17   continue paying premiums in order to remain eligible for benefits:   Defendants failed "to inform

18   [Brown and the putative class members] that CLEA and CAISI interpreted the CLEA Plan to

19   condition eligibility for benefits on continued payment of premiums even after a participant

20   incurred a covered disability, even while CLEA and CAISI communicated other information to

21   CLEA Plan participants about coverage changes." Compl. at 8. Brown alleges that by failing to

22   disclose such important information, Defendants breached their fiduciary duty. *Id*. at 7. He claims

23   relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Id*.

24        **B.    Third Party Complaint**

25        Defendants in turn filed a Third Party Complaint ("TPC") against OPOA, asserting a claim

26

27   ────────────────────
     [1] Complaint does not make clear the time period of the benefits sought or the months for which
28   Defendants paid disability benefits, if any.
     [2] Complaint states "June 2013," which the Court assumes is a typo.

                                                    2

of equitable indemnity under 29 U.S.C. § 1132(a)(3). TPC at 2. The TPC alleges that in the event that Defendants are held liable for breach of fiduciary duty, they should be indemnified by OPOA because Defendants tried to inform Brown of the risk of losing his benefits if he did not enroll in the CLEA Individual Plan after the termination of his CLEA Group Plan but OPOA misinformed Brown and prevented Defendants from giving the correct information. *Id.* at 6.

Defendants allege that on April 13, 2012, they learned about OPOA's intent to end its members' participation in the CLEA Plan effective May 1, 2012. TPC at 4. Then, on April 18, 2012, Defendants wrote a letter to OPOA members who were enrolled in the CLEA Plan, stating among other things that "OPOA members would lose certain benefits by dropping the CLEA Plan, and that the OPOA members could retain uninterrupted CLEA coverage by enrolling in the CLEA Individual LTD Plan." *Id.*

The TPC alleges that OPOA told their members, in a response titled "CLEA, Stop Harassing Our Members!" that Defendants' letter "was harassment, did not apply to them, and should be ignored, and, further, told OPOA members who were out on 4850 pay, including Plaintiff Brown…that they were covered by CLEA and the CLEA Plan and did not need to enroll in the CLEA Individual LTD Plan." TPC at 4. Further, OPOA's counsel sent a letter to Defendants demanding that they "cease and desist from any further communication with OPOA members and cease using OPOA member information, and threatened legal action if CLEA continued to communicate with OPOA members." *Id.* at 5.

Finally, Defendants allege that between April 15, 2012 and May 31, 2012, they communicated with OPOA and explained that "by terminating the CLEA Plan, OPOA was placing its members at risk of losing their eligibility for coverage and that OPOA had members who needed to stay in the CLEA Plan (by enrolling in the CLEA Individual LTD Plan) to maintain their eligibility for coverage." TPC at 5. However, "OPOA failed to inform Plaintiff Brown and other OPOA members that they might need to enroll in the CLEA Individual LTD Plan in order to maintain their eligibility for coverage and benefits." *Id.*

Defendants claim equitable indemnity under a theory that OPOA was a fiduciary to OPOA members with respect to the CLEA Plan and breached its fiduciary duties under 29 U.S.C. § 1104

3

by giving members wrong information about the termination of benefits and preventing Defendants from providing correct information: "by demanding that CLEA cease all communications with OPOA members, OPOA breached its fiduciary duties to OPOA members in that it prevented CLEA from providing further information to OPOA members about the effect that OPOA's termination of the CLEA Plan might have on them and the benefits that OPOA members might lose if they did not enroll in the CLEA Individual LTD Plan." *Id.* at 6.

## III.    LEGAL STANDARD

Failure to state a claim upon which relief may be granted is a basis for dismissal. Fed. R. Civ. P. 12(b)(6). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In ruling on a Rule 12(b)(6) motion, the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). The complaint need not contain "detailed factual allegations," but must allege facts sufficient to state a claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is plausible on its face when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

## IV.    ANALYSIS

OPOA makes two arguments:  (1) Defendants' alleged facts fail to state a claim that OPOA was a fiduciary and (2) Defendants' legal theory is not cognizable because ERISA does not provide plan fiduciaries with a claim for equitable indemnity against a co-fiduciary.[3] Mot. at 1. We address OPOA's arguments in turn.

---

[3] OPOA also argues that the TPC does not allege cognizable derivative liability theories with respect to Plaintiff's claim for benefits under § 1132(a)(1)(B) and claim for declaratory relief under § 2201, which Defendants concede. Opp'n at 12.

United States District Court
Northern District of California

### A.    Fiduciary Status

To be liable for a breach of fiduciary duty, one must have fiduciary responsibility or authority under 29 U.S.C. § 1002(21)(A). *See Blatt v. Marshall and Lassman*, 812 F. 2d 810, 812 (2d Cir. 1987) (quoting H.R. Rep. No. 1280, 93d Cong., 2d Sess., reprinted in 1974 U.S. Code Cong. & Ad. News 4639, 5038, 5103) (the definition of fiduciary "includes persons who have authority and responsibility with respect to the matter in question, regardless of their formal title"). Section 1002(21)(A) defines fiduciaries as those who either hold positions of fiduciary responsibility or exercise their fiduciary authority over the plan:

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. 1002(21)(A). To determine whether one qualifies as a fiduciary, courts ask whether one exercises discretionary authority or control respecting management over the plan, exercises any authority or control respecting management or disposition of the plan's assets, gives investment advice, or has discretionary authority or responsibility in the administration of the plan. *See Harold Ives Trucking Co. v. Spradley & Coker, Inc.*, 178 F.3d 523, 526 (8th Cir. 1999); § 1002(21)(A). Without any responsibility or authority over a plan's management and administration, one cannot be a fiduciary. *See Deas v. Nation Sheet Metal Workers Union Nat'l Pension Fund*, 114 F. Supp. 2d 1259, 1274 (S.D. Ala. 2000) (finding that labor union was not an ERISA fiduciary because it never had authority or control over the fund's assets, management, or administration).

Here, there are no allegations that OPOA had any responsibility, authority, or control over the plan's management, assets, or administration. See Compl. Defendants allege that OPOA told its members that CLEA's letter regarding benefits termination "did not apply to them, and should be ignored" and that members out on 4850 pay "were covered by CLEA and the CLEA Plan and did not need to enroll in the CLEA Individual LTD Plan." (TPC at 4) Defendants further allege that OPOA "demanded that CLEA cease and desist from any further communication with OPOA

United States District Court
Northern District of California

United States District Court
Northern District of California

1  members and cease using OPOA member information, and threatened legal action if CLEA

2  continued to communicate with OPOA members." (TPC at 5) Finally, Defendants allege that

3  OPOA "failed to inform Plaintiff Brown and other OPOA members that they might need to enroll

4  in the CLEA Individual LTD Plan in order to maintain their eligibility for coverage and benefits."

5  (TPC at 5) None of these alleged facts points to OPOA having responsibility or authority over the

6  CLEA Plan's management, assets, or administration.

7      Defendants argue that OPOA attained fiduciary status – and assumed fiduciary duties – by

8  telling plan participants that they would continue to be covered by the CLEA Plan and did not

9  need to enroll in the individual plan to keep their benefits. Opp'n at 12. In support of their

10 argument, they cite *Varity Corp. v. Howe*, 516 U.S. 489 (1996). *Id.* at 10. *Varity*, however, does

11 not support the conclusion that a non-fiduciary becomes a fiduciary simply by making "intentional

12 representations about the future of plan benefits." *Id.* at 11. Instead, *Varity* holds that a firm which

13 has dual roles as both plan administrator and employer is acting in its administrator-fiduciary

14 capacity when people within the firm "who had authority to communicate as fiduciaries" make

15 representations to beneficiaries about future plan benefits. *Varity Corp.*, 516 U.S. at 503 ("We

16 conclude, therefore, that the factual context in which the statements were made, combined with the

17 plan-related nature of the activity, engaged in by those who had plan-related authority to do so,

18 together provide sufficient support for the District Court's legal conclusion that Varity was acting

19 as a fiduciary"). Thus, Varity Corp. had administrative-fiduciary authority independent of its

20 statements about future plan benefits. Its statements in no way gave rise to its fiduciary authority.

21 Here, there is no allegation that OPOA had any fiduciary authority independent of its statements.

22      The fact that Varity had fiduciary authority is critical:  the *Varity* Court needed to determine

23 whether Varity was acting as an administrator or an employer because if Varity was acting as an

24 employer, it would not be liable for breach of fiduciary duty. *See Varity Corp.*, 516 U.S. at 495.

25 Only if Varity were acting as an administrator would it be liable for breach of fiduciary duty. *See*

26 *id.* Varity would not be liable for breach of fiduciary duty if it had been acting as an employer

27 because employers generally do not have responsibility or authority over the plan's management

28 or administration, unless they are also plan administrators. *See id.*; *Malia v. Gen. Elec. Co.*, 23

F.3d 828, 833 (3d Cir. 1994) ("Employers take on fiduciary obligations of the type alleged…only to the extent that they act as the actual plan administrators"). Therefore, in determining fiduciary status, we must consider not just whether one is acting like a fiduciary but also whether one has fiduciary responsibility or authority in the first place. *See Varity Corp.*, 516 U.S. at 503; § 1102(21)(A). Defendants do not provide any cases that support the notion that a non-fiduciary becomes a fiduciary simply by making representations about future plan benefits, and the Court does not know of any such cases. Given the lack of allegations that OPOA had any responsibility, authority, or control over the CLEA Plan's management, assets, or administration, Defendants have not stated sufficient facts to support the conclusion that OPOA was a fiduciary under ERISA. Therefore, Defendants' TPC, which alleges breach of fiduciary duty, must be dismissed.

**B.     Section 1132(a)(3)**

Even if OPOA acted in a fiduciary role, Defendants have not stated a cognizable claim under § 1132(a)(3). The general rule is that ERISA does not provide remedies, such as contribution, for a breaching fiduciary against its co-fiduciaries under § 1132(a). *See Kim v. Fujikawa*, 871 F.2d 1427 (9th Cir. 1989); *Call v. Sumitomo Bank of California*, 881 F.2d 626 (9th Cir. 1989). In the *Board of Trustees of the California Winery Workers Pension Trust Fund v. Union Bank*, the court applied *Kim* and *Call*'s holding to inter-fiduciary indemnity claims, finding that ERISA does not provide equitable indemnity for a breaching fiduciary against its co-fiduciaries. *See Bd. of Trustees of California Winery Workers Pension Trust Fund v. Union Bank N.A.*, No. C 10-02240 SI, 2011 WL 1321602, at *6 (N.D. Cal. Apr. 6, 2011) ("the Court does not see a meaningful distinction between claims for contribution – which are disallowed under *Kim* and *Call* – from those seeking indemnification for purposes of determining whether the common law of ERISA allows a right of action between co-fiduciaries"). While *Kim* and *Call*'s holdings are grounded in a Supreme Court opinion analyzing the scope of relief under § 1132(a)(2), *Winery Workers* addresses a claim for relief under § 1132(a)(3). *See Kim*, 871 F.2d at 1432 (quoting *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 139–144 (1985)); *Call*, 881 F.2d at 631; *Bd. of Trustees of California Winery Workers Pension Trust Fund*, No. C 10-02240 SI, 2011 WL 1321602, at *5.

United States District Court
Northern District of California

1    Whether relief is claimed under subsection (a)(2) or (a)(3), neither provides a remedy for

2 injuries to a fiduciary. This is because §§ 1132(a)(2) and (a)(3) allow relief only for the plan and

3 its beneficiaries. *See Kim*, 871 F. 2d at 1432 (§1132(a)(2), by reference to § 1109, "only

4 establishes remedies for the benefit of the plan. Therefore, this section cannot be read as providing

5 for an equitable remedy of contribution in favor of a breaching fiduciary"); *see also Varity Corp*.,

6 516 U.S. at 510 (finding that relief under §§ 1132(a)(3) and (a)(5) "would include an award to

7 'participants and beneficiaries'…for breach of fiduciary obligation"). While *Varity* extended relief

8 under (a)(3) to beneficiaries and participants in addition to the plan itself, it did not purport to

9 apply the provision to remedy injuries to anyone other than the plan and its participants and

10 beneficiaries. *See Varity Corp*., 516 U.S. at 510 (relief to a plan beneficiary is authorized under §

11 1132(a)(3) because § 1132(l) specifically includes relief to "participants and beneficiaries" in an

12 analogous situation, and ERISA's basic purpose is to protect "participants" and "beneficiaries").

13 *Varity* provides no indication that (a)(3)'s remedies extend to injuries to fiduciaries. *See id.*

14    In *Youngberg*, a plan beneficiary sued for wrongful denial of benefits due to

15 miscalculations. *See Youngberg v. Bekins Co.,* 930 F. Supp. 1396, 1403 (1996). One fiduciary

16 cross-claimed against its co-fiduciary, arguing that the entire burden should be shifted to the co-

17 fiduciary where the co-fiduciary alone was responsible for calculating benefits and the fiduciary

18 had no control over the calculation of benefits. *See id.* Even if *Youngberg* is correct, the

19 allegations here do not support a 100 percent indemnity claim and thus *Youngberg* does not apply.

20 *Youngberg* held that § 1132(a)(3) provides fiduciaries relief in cases of 100 percent indemnity,

21 where the "entire burden" should be shifted because the fiduciary participated in no wrongdoing

22 and had no control over the misconduct and the co-fiduciary alone was wholly responsible for the

23 injury. *See id.*

24    Here, Defendants do not allege that OPOA rather than Defendants was responsible for

25 communicating with beneficiaries regarding plan benefits, or that the Defendants had no control

26 over communications with plan participants. To the contrary, Defendants' allegations show that

27 they took part in communicating with these plan participants and OPOA did not have exclusive

28 control over the communications. TPC at 4 ("On about April 18, 2012, CLEA, through CAISI,

sent a letter to OPOA members who were enrolled in the CLEA Plan"). Defendants allege that OPOA provided participants false information about plan benefits; told participants to ignore Defendants' letter; failed to disclose the risks of benefit termination to participants; demanded that Defendants stop communicating with OPOA members and using OPOA member information and "threatened legal action if CLEA continued to communicate with OPOA members." TPC at 4–5. None of these allegations support a claim that OPOA had exclusive responsibility and control in communicating benefits information to OPOA members.

Finally, indemnity is particularly inappropriate in this case, even under the standard enunciated in *Youngberg*. Defendants are accused of *failing to disclose* certain benefits information to participants. Assuming liability (the predicate to an indemnity claim), Defendants will have been found to have failed to disclose this information. Under such circumstances, the conduct of a third party (OPOA) may have exacerbated the confusion among beneficiaries, but cannot be said to be the sole cause of the lack of correct information, or of the resulting damage.

Moreover, this case demonstrates why, in every case other than Youngberg, courts have declined to allow breaching fiduciaries to seek relief by complaining against other fiduciaries. If Defendants failed to disclose the correct benefits information, they are responsible for the resulting injury to the plan and beneficiaries under ERISA. The fact that a third party, even if that third party is a co-fiduciary, also harmed the beneficiaries, should not relieve the charged fiduciary defendant from responsibility for its own acts. Therefore, Defendants have not stated a claim upon which relief may be granted.

## V.       CONCLUSION

For the foregoing reasons, Third Party Complaint is DISMISSED WITHOUT LEAVE TO AMEND.[4]

**IT IS SO ORDERED.**

Dated:  March 2, 2015

_____
JOSEPH C. SPERO
Chief Magistrate Judge

_____

[4] At oral argument, Defendants' counsel conceded that she does not have new facts to warrant leave to amend.

United States District Court
Northern District of California